## JOHN JEFFRIES *v.* THE STATE.

1. EVIDENCE — RES GESTÆ.— The evidence disclosed that, immediately preceding the discharge of the pistol by the accused, the prosecuting witness, who was the assaulted party, ordered his daughter, the wife of the accused, to leave the room, to which order she replied, "No, pa; if I do, John will shoot you." To this evidence the accused objected as hearsay. *Held*, competent, as being part of the transaction about which the witness was testifying.

2 CHARGE OF THE COURT. — The general charge and special instructions given or refused at the request of either party must be certified by the judge in order to constitute a part of the record on appeal.

3. DRUNKENNESS affords no excuse for voluntary crime. As it does not mitigate culpable homicide below the grade of murder, it cannot mitigate an assault with intent to murder to aggravated assault.

APPEAL from the District Court of Smith. Tried below before the Hon. H. G. ROBERTSON, Special Judge.

The conviction was for assault with intent to kill one William Goss, the father-in-law of accused, and the penalty assessed was four years' confinement in the penitentiary. The opinion discloses the case.

*G. W. & Horace Chilton,* for the appellant. The errors complained of primarily divide themselves into two principal heads: first, the action of the court in ignoring the question of manslaughter, by a refusal of all special instructions presenting the issue; and, second, the action of the court in ignoring the question of defendant's drunken condition, by a refusal of all special instructions presenting that issue. Both these points were material; they arose out of the facts in evidence, and, even pretermitting the subject of the refusal of the special charges, the silence of the general charge on these phases of the case stamps error upon it.

The statement of facts clearly shows that the assault was in " sudden passion," and the only scruple which can possibly be started is as to whether it was upon " adequate cause." The second special charge refused contained the statutory definition of manslaughter, and to that definition was superadded the proposition that there are other adequate causes than those enumerated in the law, and that the existence of such adequate cause is a question of fact for the jury. If the law of manslaughter was applicable to the facts, this refusal was error, for it is settled that there are other adequate causes than the statutory illustrations.

*Johnson* v. *The State*, 43 Texas, 615 ; *West* v. *The State*, 2 Texas Ct. App. 460 ; *Guffee* v. *The State*, 8 Texas Ct. App. 201.

Several other special charges follow in the record. Their rejection clearly proceeds from the conclusion of the court adverse to the theory of manslaughter as a factor in this case. The facts — showing the situation of defendant in his own habitation (for the circumstance that the house was the property of the prosecuting witness is immaterial, when the possession was rightfully in defendant) ; that the prosecuting witness had been heard to threaten to take the defendant's life if he came home drunk and abused his wife ; that this threat had been communicated to the defendant ; that the prosecuting witness approached the defendant in an angry manner — certainly beget a doubt that the act arose from that deliberation which is essential to make the offence murder, either in the first or second degree, had death ensued. In case of doubt, however slight, as to the grade of offence, the court should give the jury the opportunity to pass on the doubt. *Hill* v. *The State*, 5 Texas Ct. App. 3 ; *Robles* v. *The State*, 5 Texas Ct. App. 358 ; *Sutton* v. *The State*, 2 Texas Ct. App. 344 ; *Marshall* v. *The State*, 40 Texas, 200.

The next branch of our discussion relates to the action of the court whereby the question of the drunkenness of the defendant at the time of the commission of the offence was suppressed as an issue in the case. In various forms we sought to get before the jury the view that, while voluntary drunkenness is no excuse, either totally or partially, for crime, yet if the defendant was entirely bereft of reason, the intent to murder would be lacking, in contemplation of the penal law. The court below refers to this point remotely and in a negative way, when, if it was worth anything (as has lately been decided by this court), it was entitled to a fair presentation to the jury. That voluntary intoxication is no defence for crime is indisputably the law of the land,

but that this court has ever decided that, when the mind is taken away, the reason lost, and no degree of intelligence survives, there can be malice, either express or implied, we do not admit.    *Payne* v. *The State*, 5 Texas Ct. App. 35 ; *Wenz* v. *The State*, 1 Texas Ct. App. 39.

The assistant attorney-general has intimated some question as to the authentication of our special charges.    That the word " given " or " refused " is sufficient, where the charges are filed and no circumstance of suspicion accompanies them, see *Crook* v. *McGreal*, 3 Texas, 490 ; *Thompson* v. *Chumney*, 8 Texas, 393.

In *Smith* v. *The State*, 1 Texas Ct. App. 415, the special charge was neither signed by the judge, nor indorsed nor filed by the clerk.    It would seem that this point, if good, would be more perilous to the State than the defendant. *Lindsay* v. *The State*, 1 Texas Ct. App. 585 ; *West* v. *The State*, 2 Texas Ct. App. 212 ; *Hubbard* v. *The State*, 2 Texas Ct. App. 506.

But, no matter how this may be, it is an established rule of practice that in felony cases the court is required to give all the law applicable, whether demanded or not.    The drift of the testimony required the giving of appropriate charges on the two vital points of manslaughter and drunkenness.

In this discussion we have spoken of manslaughter.    Of course, manslaughter was not an element in the case in itself, but it became such by reason of the rule that the distinction between manslaughter and murder was the criterion of the defendant's guilt of assault with intent to murder or of aggravated assault and battery.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J.    The appellant was tried and convicted in the District Court on a charge of assault with intent to murder William Goss, alleged to have been committed on August 4, 1880.    The facts attending the commission of the

offence may be briefly stated as follows: The defendant is the son-in-law of Goss, on whom the assault is charged to have been made, and they were living at the time in different parts of the same house, situated on the place of Goss. On the day of the difficulty, Goss and the defendant were in the city of Tyler, and the defendant was drinking. Goss took the defendant in his (Goss') wagon, and they went home together, Goss driving and the defendant lying down in the wagon. On arriving at the house where the parties lived, Goss got out of the wagon, leaving the defendant in the wagon. Here it seems that the defendant appeared to be drunk, and that his wife went to his assistance, got him out of the wagon, and assisted him into his own room in the house, Goss having previously gone into his room, and the two apartments being connected by a covered passway. A short time after the defendant had gone into the house, his wife was heard screaming and calling to a man on the place for assistance. On hearing this the assaulted party arose from the table, where, it seems, he was eating, and went into the defendant's room. Goss also stated that he heard the defendant call for his pistol; and when Goss entered the room, the defendant was standing on the floor, with a pistol in his hand, cursing his wife. Goss says he went around the defendant, and got between him and his wife, and asked the wife what she let the defendant have the pistol for, and told her to go on out. She said, "No, pa; John will shoot you if I do." Goss testifies that he turned around and asked the defendant what on earth he was doing with that pistol. The defendant asked Goss if he took it up. Goss replied, "No, not particular." The defendant said then, "You are mine," and raised his pistol and shot Goss in the breast.

As to these matters there was no material disagreement among the witnesses for the State and for the defendant. There was other testimony, which we do not deem it important to notice in this connection, further than to say there

was some effort made to discredit some of the witnesses, all of which went to the jury under an appropriate charge of the court.

When the witness Goss was testifying, and had reached the point in his evidence where he says he told the wife of the defendant to go out, the district attorney asked the witness what she said ; to which the defendant's counsel objected, on the ground that what the wife said was hearsay, and not a part of the *res gestæ*.   The court overruled the objection, and the witness answered, "No, pa ; if I do, John will shoot you."   The defendant excepted to both the question and the answer, and took a bill of exceptions.   The objection to the testimony was, in our opinion, not well taken. What the wife said to her father, as well as her screams and call for help, were all parts of the transaction about which the witness was testifying, and were in the nature of verbal acts going to illustrate the feelings, motives, and acts of the principal actors, of whom the wife was one.

As to the matters set up in the defendant's second bill of exceptions, we do not find anything calling for an expression of opinion.   When the district attorney desired that the witness be called, it is true the time may not have been opportune with reference to a due regard for decorum in a court of justice, but we see nothing in this to call for special criticism.   Whilst it may be conceded that the reply of the district attorney, when asked by the defendant's counsel to state candidly his purpose in having the witness called, might ordinarily be objectionable, yet in this instance the reply was in response to the question, and the defendant, under the circumstances, ought not to complain.   Ordinarily, nothing would be proper which would be calculated to oppress, overawe, or intimidate a female, or, in fact, any other witness, so long as the witness keeps within the bounds of propriety and decorum. In this instance we find nothing to condemn.

The defence mainly relied on in the court below was

drunkennness; and it is shown that the defendant, at the time, or just prior to the commission of the offence, was in a state of intoxication, though to what precise extent the witnesses are not entirely agreed. On this subject the witnesses testified and the court instructed the jury. It seems, too, from the record, that the defendant made an effort to have the jury further instructed on this branch of the defence; but these papers purporting to be additional charges are not so authenticated as charges which were asked and refused, as that we are at liberty to consider them for any purpose on appeal.

The Code of Procedure, art. 680, provides: "The general charge given by the court, as well as those given or refused at the request of either party, shall be certified by the judge and filed among the papers in the cause, and shall constitute a part of the record of the case." The tangible objection here is that these papers purporting to be special or additional instructions are wanting in not having been acted on by the judge who presided at the trial. This court, in *Roberts* v. *The State*, 5 Texas Ct. App. 141, held that the signature of the judge to the charge of the court was a sufficient certifying under the Code; but the law requires that not only the main charge, but those given or refused at the request of either party, should bear the signature of the judge. *Carr* v. *The State*, 5 Texas Ct. App. 153, and authorities there cited. The official signature of the judge is all the authentication the rules of practice require. If a charge is requested by either party, and bears the signature of the judge, the presumption is that it was given; but with reference to special charges the record ought in strictness to show whether the charge was *given* or *refused*, besides being signed officially by the judge.

From the view we take of the law of the case, however, the failure or omission of the judge to sign the special charges relating to drunkenness as a defence can work no injury to the defendant. We do not propose to discuss at

this time the general doctrine of drunkenness as a defence of crime embracing both act and intent. With reference to this case, and to which our remarks apply, we are of opinion that drunkenness is no defence whatever. The mere fact of drunkenness alone will not reduce to manslaughter a homicide which would otherwise be murder. The fact of being drunk, or mere mental excitement or ungovernable rage which may be engendered by drinking intoxicating liquors, will not reduce the crime of a voluntary killing below the grade of murder. *Pugh* v. *The State*, 2 Texas Ct. App. 539 ; *Farrer* v. *The State*, 42 Texas, 265. If, then, drunkenness would not reduce a voluntary homicide from murder to manslaughter, neither will drunkenness reduce a voluntary assault with intent to murder to an aggravated assault and battery.

The other matters set up in defence are but the catching at straws of a drowning man. There was some conflict in portions of the testimony, but, except on the question of drunkenness, the conflict is deemed unimportant. At any rate, the question of the credibility of the witness was fairly and fully submitted to the jury by the charge of the court. The evidence amply supports the verdict of the jury. The charge of the court fairly and impartially instructed the jury as to every legitimate view presented by the proofs adduced. The indictment has not been questioned. The trial seems to have been conducted with proper regard for the forms of law, and the judgment must be affirmed.

*Affirmed.*